## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEITH ANTONIO TATE,

      Petitioner,

v.

CATHERINE BAUMAN,

      Respondent.

_____/

Civil No. 5:13-CV-11118
HONORABLE JOHN CORBETT O'MEARA
UNITED STATES DISTRICT JUDGE

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Keith Antonio Tate, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317, assault with intent to commit great bodily harm less than murder, M.C.L.A. 750.84, and possession of a firearm during the commission of a felony, M.C.L.A. 750.227b.  For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I.  Background

      Petitioner was convicted following a bench trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254

1

(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The convictions arose from a drive-by shooting in which Toriano Collins (known as "T") was killed, and Robert Madden was knocked down by a bullet that hit his zipper. Defendant was linked to the crime by Madden, who identified defendant as the shooter.
>
> In a prior appeal, this Court originally determined that the trial court abused its discretion in denying defendant's motion for a new trial based on newly discovered evidence. *People v. Tate*, unpublished opinion per curiam of the Court of Appeals, issued June 5, 2003 (Docket No. 231230). This Court's decision focused on an affidavit from a prison inmate, Richard Eddings, concerning his knowledge of facts indicating that the perpetrators were two other men, known as Pooh and Red. The trial court had determined that this newly discovered evidence would not have led to a different result. *Id.,* slip op, p 4. This Court explained that the trial court's determination that the evidence would probably not have altered the outcome of the trial was not conclusive. *Id.*, slip op, p 5. As explained by this Court, "The trial testimony of the prosecution' sole eyewitness, Robert Madden, was full of contradictions and his ability to perceive the shooter deeply questionable, at best."*Id*. This Court explained in detail the weaknesses of Madden's testimony, including the fact that Madden claimed in a taped interview with defense counsel that defendant was not the shooter and that Madden had been pressured by the police to identify defendant. *Id.*, slip op, p 6.
>
> The prosecution filed a motion for reconsideration of this Court's opinion, and this Court granted the motion as follows:
>
> > This Court orders that the motion for rehearing is granted to the limited extent that the remand for new trial is modified as follows: On remand, within 42 days of the Clerk's certification of this order, the court shall conduct a hearing at which defendant shall present the inmate affiant's testimony, and any other evidence in support of his motion for new trial. If the testimony is substantially in accord with the affidavit, a new trial shall be granted. If the inmate is not produced, or the testimony is not substantially in accord, the trial court shall either grant or deny the motion based on the record made, and consistent with our opinion. [*People v. Tate*, unpublished order of the Court of Appeals, entered September 22, 2003 (Docket No. 231230).]
>
> On remand, the trial court held an evidentiary hearing at which the affiant of

2

the affidavit, Richard Eddings, testified.  Following the hearing, the trial court ruled that Eddings' did not testify substantially in accord with his affidavit. The court concluded without explanation that his testimony was not credible.

*People v. Tate,* No. 254868, 2006 WL 1688085, at *1-2 (Mich.Ct. App. June 20, 2006).

The Michigan Court of Appeals reversed and remanded the matter for a new trial based on the newly discovered evidence. *Id.* at * 2-6.

In lieu of granting leave to appeal, the Michigan Supreme Court reversed the judgment of the Michigan Court of Appeals and reinstated the conviction. *People v. Tate,* 477 Mich. 1066, 728 N.W. 2d 873 (2007)(Cavanagh and Kelly, JJ., would deny leave to appeal).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Tate,* No. 99-012340 (Third Judicial Circuit Court, April 24, 2008). The Michigan Court of Appeals denied petitioner leave to appeal. *People v. Tate,* No. 291123 (Mich.Ct.App. September 10, 2009).

The Michigan Supreme Court vacated the Court of Appeals order and remanded the case to the Court of Appeals for it to consider the issues raised in petitioner's original direct appeal that had not yet been addressed by the Michigan Court of Appeals. *People v. Tate*, 486 Mich. 925, 781 N.W.2d 842 (2010).

On remand, the Michigan Court of Appeals again affirmed petitioner's conviction. *People v. Tate*, No. 291123, 2011 WL 6376006 (Mich. Ct. App. Dec. 20, 2011).  The Michigan Supreme Court denied petitioner leave to appeal. *People v. Tate*, 493 Mich. 855, 820 N.W.2d 794 (2012).

3

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  The evidence presented was insufficient to find petitioner guilty beyond a reasonable doubt, in violation of due process.

II. Petitioner's right to a jury trial was violated by an involuntary, unknowing, and unintelligent waiver of that right, made under the false premise that he would otherwise be unable to use critical impeachment evidence while retaining the attorney of his choice.

III. The prosecutor withheld material, exculpatory, or impeachment evidence, refused to permit the defense to interview witnesses, elicited evidence of third-party threats against a prosecution witness without any evidence connecting them to petitioner, introducing other acts evidence in violation of the trial court's order, and denigrated defense counsel.

IV. The trial court's failure to suppress the in-court and out-of-court identifications by Robert Madden denied petitioner a fair trial.

V. Appellate counsel for the appeal after remand was ineffective for failing to raise the claims that were raised but not addressed in the initial appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the

4

evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state

5

court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

### III.  Discussion

#### A.  Claim # 1.  The Sufficiency of the Evidence Claim.

In his first claim, petitioner contends that there was insufficient evidence to sustain his conviction because the conviction was based on the testimony given by one eyewitness who gave conflicted testimony.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant

6

question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote

omitted)(emphasis in the original).  The *Jackson* standard applies to bench trials, as well

as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

More importantly, a federal habeas court may not overturn a state court decision

that rejects a sufficiency of the evidence claim simply because the federal court disagrees

with the state court's resolution of that claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of the

*Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational

people can sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be mistaken, but that

they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state

court conviction, "the only question under *Jackson* is whether that finding was so

insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*,

132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v.*

*Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the

fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003); *see also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge).  The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

The eyewitness, Robert Madden, testified that a vehicle drove up to where he and the victim were talking and when the victim stood up from the porch step and asked "what was up," petitioner leaned out of the passenger's side window, pointed a rifle and began firing. (T. 7/24/2000, p. 23).  Madden identified petitioner at trial as being the person who fired a shot that knocked him down when the bullet hit his zipper and further testified that he watched from the ground as petitioner unloaded the rifle killing the murder victim. (*Id.,* pp. 24-26).

The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted).  Madden positively identified petitioner as the shooter.  This evidence was sufficient to support petitioner's convictions for second degree murder, assault with intent to commit great bodily harm less than murder, and possession of a firearm in the commission of a felony. *See Brown v. Burt,* 65 Fed.Appx. 939, 944 (6th Cir. 2003).

To the extent that petitioner challenges the credibility of the Madden, he would not be entitled to habeas relief.  Attacks on witness credibility are simply challenges to

8

the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Moreover, when evidence in a bench trial "consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses." *Bryan v. Government of Virgin Islands,* 150 F. Supp. 2d 821, 827 (D. Virgin Islands 2001). In this case, the trial court judge chose to credit Madden's testimony and not to believe petitioner's version of events. This Court must defer to the trial court's finding beyond a reasonable doubt that the victim was credible. *Id.* at 828. Petitioner is not entitled to habeas relief on his sufficiency of evidence claim.

With respect to petitioner's great weight of the evidence claim, this Court notes that a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); See also *Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305

9

F. Supp. 2d at 796; *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003).  The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*  Petitioner is not entitled to relief on his first claim.

**B. Claim #2. The Waiver of Jury Trial Claim.**

Petitioner next contends that his waiver of his right to a jury trial was not freely and voluntarily given because he was forced to choose between giving up his right to a jury trial or giving up his right to use critical impeachment evidence while retaining the counsel of his choice.

The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it. *See Sowell v. Bradshaw,* 372 F. 3d 821, 832 (6th Cir. 2004). "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes,* 313 F. 3d 363, 370 (6th Cir. 2002); *see also Fitzgerald v. Withrow,* 292 F. 3d 500, 504 (6th Cir. 2002)(neither an oral colloquy, nor any other particular form of waiver, is required for a valid waiver of jury trial as a matter of federal constitutional law).  Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F. 3d at 370 (internal quotation omitted).  Most importantly, "there is a knowing and intelligent waiver where the

10

defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Sowell*, 372 F. 3d at 836 (quoting *United States v. Sammons*, 918 F. 2d 592, 597 (6th Cir. 1990)(internal quotation omitted)).

The trial court advised petitioner that he had a right to have a jury decide his case. Petitioner indicated that he understood that he had a right to have a jury trial but stated that he wished to be tried by the judge sitting without a jury, so as to allow his defense counsel to lay a foundation to be able to use what he considered critical impeachment evidence. Under the circumstances, petitioner voluntarily waived his right to a jury trial after being advised by the trial court judge of his right to a jury trial.

In addition, the mere fact that petitioner waived his right to a jury trial because he chose to retain his defense counsel while utilizing counsel to lay a foundation for the admission of impeachment evidence would not render the waiver invalid. A criminal defendant may have sound tactical reasons for relinquishing a jury trial in favor of a bench trial. *See Adams v. United States ex. rel. McCann*, 317 U.S. 269, 278 (1942)("And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury."). The Michigan Court of Appeals found "that counsel participated in creating the problem and waiving a jury trial was likely the optimal tactical strategy." *Tate*, 2011 WL 6376006, * 2. The state court's decision that petitioner's jury trial waiver was not involuntary under these circumstances

was not an unreasonable application of clearly established federal law. *See Sowell*, 372

F.3d at 835 (concluding that a petitioner's decision to waive his right to a jury trial in a

capital case was not unknowing or involuntary where the waiver was made on the advice

of defense counsel that a three-judge panel would not impose the death penalty).

Petitioner "took a litigation risk and lost; these facts alone do not create a constitutional

violation." *Id.*

On habeas review of a state court conviction, a federal court is "required to give a

high measure of deference to the state court's findings concerning a jury waiver."

*Spytma,* 313 F. 3d at 371.  After reviewing the trial court record, this Court concludes

that the state court's determination that petitioner knowingly and voluntarily waived his

right to a jury trial was not an unreasonable application of clearly established federal

law, nor was it an unreasonable determination of the facts.

### C. Claim # 3.  The Prosecutorial Misconduct Claims.

Petitioner brings a number of prosecutorial misconduct claims alleging the

withholding of information, misconduct pertaining the questioning of witnesses and the

denigration of defense counsel.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v.

Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be

held to violate a criminal defendant's constitutional rights only if they "'so infected the

trial with unfairness as to make the resulting conviction a denial of due process.'"

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner alleges that before the police showed Madden a picture which implicated petitioner, the original suspect investigated by the police was a different person known as "Lucky."  Petitioner claims that the prosecution withheld this evidence, preventing him from raising a defense that the actual shooter was another individual.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is

13

exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).  To establish a *Brady* violation, a defendant has the burden of establishing that the prosecution suppressed evidence, that such evidence was favorable to the defendant, and that the evidence was material. *Carter v. Bell*, 218 F. 3d 581, 601 (6th Cir. 2000).  A *Brady* violation is grounds for setting aside a conviction or a sentence in a habeas proceeding only if the failure to disclose the relevant material "undermines confidence in the verdict because there is a reasonable possibility that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  Stated differently, there never is a real "*Brady*" violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different result. *Coleman v. Mitchell,* 244 F. 3d 533, 541 (6th Cir. 2001)(quoting *Strickler*, 527 U.S. at 281).

Petitioner's *Brady* claim fails for several reasons.  Petitioner does not allege that he was unaware of the existence of the other individual named "Lucky," and the Michigan Court of Appeals found that the material had been produced and petitioner "was informed at a June 9, 2000 hearing that he needed to pick up the information from the police department." *Tate,* 2011 WL 6376006, * 3.  The Michigan Court of Appeals further noted:

> However, defendant was able to present to the jury (sic) that there were other people nicknamed "Lucky" in the area. Additionally, defendant had a full and fair opportunity to cross-examine the police officer who had knowledge of

14

another man known as "Lucky." Given Madden's unequivocal identification of defendant at trial as "Lucky," we are not persuaded that there was any real possibility that the outcome of the proceedings would have been different if defendant had properly received the material.

*People v. Tate*, No. 291123, 2011 WL 6376006, at *3.

There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Coe v. Bell*, 161 F. 3d at 344. This principle applies in the context of impeachment, as well as exculpatory evidence. *Byrd v. Collins,* 209 F. 3d 486, 517 (6th Cir. 2000). The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of the exculpatory evidence at issue. *Coleman v. Mitchell,* 268 F. 3d 417, 438 (6th Cir. 2001). In the present case, petitioner does not allege that he was unaware of another individual investigated by the name of "Lucky," the existence of the documents requested, or how they could be obtained. Moreover, defense counsel was able to cross-examine a police officer about the other man named "Lucky." Accordingly, petitioner is unable to establish a *Brady* violation.

Petitioner has failed to show that this impeachment evidence was material. An eyewitness identified petitioner as being the shooter. Petitioner is unable to establish the materiality of how presenting evidence pertaining to the existence of another individual named "Lucky" would have impeached Madden's identification of petitioner as the shooter. Furthermore, trial counsel utilized the inconsistencies in Madden's statements

15

to impeach his credibility.

Petitioner further claims that the prosecutor failed to turn over to the defense photographs from the crime scene. The Michigan Court of Appeals rejected this claim, on the ground that petitioner failed to show that these photographs were exculpatory. *People v. Tate*, 2011 WL 6376006, at *3.

The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d at 344. Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation." *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992)(internal quotation marks omitted), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999). Petitioner failed to show that the crime scene photographs were exculpatory; he is not entitled to relief on this claim.

Petitioner next claims that the prosecutor committed misconduct by introducing testimony given regarding threats made against Robert Madden, which petitioner claims implicated him. There is no evidence pertaining to the source of the alleged threats nor the existence of the threats. Trial counsel interviewed, recorded the discussion and then thoroughly cross-examined Madden about his statements and involvement with the police. At trial, Madden testified that he did not know specifically who was threatening him. Furthermore, the testimony pertaining to the threats was used solely to explain

16

Madden's state of mind as to why he later claimed that the statements made to the police implicating petitioner were a lie. A prosecutor who in good faith believes that a witness has been threatened or intimidated to change his testimony is permitted to question that witness whether he has been intimidated. *See U.S. v. Thomas,* 875 F. 2d 559, 562, n. 2 (6th Cir. 1989).

Petitioner next alleges that the prosecutor denigrated trial counsel. The Michigan Court of Appeals found that comments made about trial counsel were improper but concluded that the comments were harmless, as this was a bench trial. *Tate,* 2011 WL 6376006, at *4.

A bench trial judge is presumed to have considered only relevant and admissible evidence in reaching his or her decision. *See Harris v. Rivera,* 454 U.S. 339, 346 (1981)(*per curiam*)("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Joseph,* 781 F. 2d 549, 552 (6th Cir. 1986)(stating that "[i]t is well settled that in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice."); *See also Brown v. Pitcher,* 19 Fed. Appx. 154, 157 (6th Cir. 2001)(applying the rule to habeas cases). The Michigan Court of Appeals found that some of the claims of impropriety came not from the prosecutor but from the evidence itself when Madden indicated that he met with trial counsel because he felt harassed and that trial counsel drove him to the store and bought him a halfpint of liquor. *Tate,* 2011 WL 6376006, at *4. Being that the comments were in context and that it was

17

a bench trial, the court found the comments relevant and any error harmless as they were taken in context.  "Judges, unlike jurors, are presumed capable of ignoring such errors and to decide cases based solely on the actual evidence properly admitted at trial." *Tate*, 2011WL 6376006, at *4.  Any error was harmless.

Petitioner alleges that the prosecutor violated a stipulation to not introduce other-acts evidence pertaining to alleged drug dealing by petitioner.  The prosecutor and trial counsel agreed to call "the co-defendant's alibi witness, for whom co-counsel had failed to provide statutory notice." (Habeas Petition, p. 38).  During trial the alibi witness, Barnes, testified that she sold drugs to petitioner.  Trial counsel objected to the testimony and the prosecutor later portrayed "petitioner's alibi witness [Barnes] as a prostitute who traded her body for drugs." *Id.*  It is petitioner's contention that trial counsel was "unable to counter the evidence, which directly underminded Petitioner's alibi defense by suggesting a motive for the alibi witness to lie (ie, that she was allegedly a prostitute who sold her body to Petitioner for drugs and thus might also sell her alibi testimony on the hope of a future provision from  Petitioner of drugs)."

A showing of motive, precludes a bar of prior bad-acts testimony at trial. Petitioner admits that the testimony was admitted to show that his alibi witness had a motive to lie.  The testimony may have "inflicted a devasting blow on the defense," (Habeas Petition, p. 39); however, it was admissible as an exception to the rule pertaining to prior bad-acts evidence.  A witness's opportunity and motive to fabricate testimony are permissible areas of inquiry. *See People v. Buckey,* 424 Mich. 1, 15, 378

18

N.W. 2d 432 (1985).

Petitioner acknowledges the finding by the state court that he "opened the door to evidence of drug activity," and cites the finding by the state trial judge that "the trial court determined that the evidence was admissible." *People v. Tate,* 2011 WL 6376006, at *4. Although petitioner framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). While petitioner contends that the court provided no further explanation to support its finding, motive is clearly an exception which made the testimony admissible. Petitioner opened the door. The prosecutor did not violate the stipulation when testimony pertaining to drug use was admitted to show that petitioner's alibi witness had a motive to lie.

Petitioner's last prosecutorial misconduct claim was raised in his motion for relief from judgment as follows:

> Defendant also claims that the prosecutor and the officer-in-charge of the case refused to allow defense Counsel to interview a witness. The officer-in-charge testified that he had not instructed a witness not to talk with counsel. This claim is wholly without merit and defendant has not shown that he did not receive a fair trial because of the alleged misconduct. This claim is denied.
>
> *People v. Tate,* No. 99-012340, * 3.

19

The trial court found that this claim is without support.  Petitioner's final prosecutorial misconduct claim is meritless.

### D.  Claim # 4. The out-of-court identification claim.

Petitioner alleges that the trial court improperly allowed Madden's out-of-court identification pertaining to a photograph because it was unduly suggestive.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly

suggestive, or if the totality of the circumstances indicate that the identification is

otherwise reliable, no due process violation has occurred; so long as there is not a

substantial misidentification, it is for the jury or factfinder to determine the ultimate

weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th

Cir. 1992); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

Petitioner contends that Madden's identification was tainted when "he was shown

a Polaroid of Petitioner at a one-photo showup." (Habeas Petition, p. 44). However, as

the Michigan Court of Appeals indicated, *Tate,* 2011 WL 6376006, at *4, Madden had

already identified petitioner as a person with whom he was familiar and as the shooter,

providing a description and nickname to the police. Furthermore, Madden previously

knew petitioner for several years. The photograph was shown to Madden to get him to

confirm or deny that petitioner as the shooter. It is not unduly suggestive to show a

surveillance videotape or photograph of a single suspect to a person who already knows

the suspect when it is done for the purpose of confirming whether the defendant is the

person on the videotape or photograph. *See U.S. v. Beverly,* 369 F. 3d 516, 539 (6th Cir.

2004).

The Michigan Court of Appeals found the photograph was used to confirm an

identity already established as follows:

> Next, defendant argues that Madden's out-of-court identification of defendant
> should have been suppressed. Madden was only shown one picture and
> identified defendant. However, those facts are misleading out of context. By
> that time, Madden had already identified defendant—a person with whom
> Madden was familiar—as the shooter and provided a description of him and

21

a nickname to police.  Considering all of the circumstances, evidence of Madden's out-of-court identification of defendant by photo did not constitute plain error that was outcome determinative.  Rather than being unduly suggestive, the procedure seems to be more of an attempt to confirm an identity already established. Madden's in-court identification was also properly admitted. Although the shooting happened quickly and at night, there was street illumination in the area, and Madden had known defendant for several years and viewed defendant leaning out of a car window shooting a gun.

*Tate*, 2011 WL 6376006, at * 4.

The photograph was utilized to merely confirm the prior identification of Petitioner as the shooter.  Petitioner is not entitled to habeas relief on his fourth claim.

### E. Claim # 5.  Ineffective assistance of appellate counsel.

Petitioner's final claim alleges that appellate counsel on remand was ineffective for failing to raise on remand the claims contained in his initial appellate brief.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant

22

must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

This Court has already determined that petitioner's claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Moreover, the Michigan Supreme Court, on post-conviction review, remanded the case to the Michigan Court of Appeals to consider the other claims raised on petitioner's initial direct appeal which had not been discussed by that court. Because petitioner's remaining claims were considered and rejected by the Michigan Court of Appeals as part of petitioner's direct appeal, petitioner was not prejudiced by appellate counsel's alleged ineffectiveness. Petitioner is not entitled to relief on his final claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were

23

adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date:  July 15, 2015

24

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 15, 2015, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager